GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee,

v.

HOLLANSHEAD, Appellant;

Cadillac Motor Car Company et al., Appellees.

[Cite as *Gen. Motors Acceptance Corp. v. Hollanshead* (1995), 105 Ohio App.3d 17.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8-94-37.

Decided June 23, 1995.

18

*Daniel A. Nagle,* for appellee General Motors Corp.

*Wilson & Kochheiser* and *Keith A. Kochheiser,* for appellant.

*Vorys, Sater, Seymour & Pease* and *William D. Kloss, Jr.,* for appellee Cadillac Motor Car Co.

---

SHAW, Judge.

Defendant-appellant, Linda M. Hollanshead ("defendant"), appeals the decision of the Logan County Court of Common Pleas, granting summary judgment in favor of third-party defendant-appellee, Cadillac Motor Car Company and the General Motors Corporation (hereinafter "Cadillac/GMC") on plaintiff's third party complaint for breach of warranty and violation of Ohio's Lemon Law.

In 1992, defendant leased a 1992 Cadillac Eldorado from McDaniel Motors. In April 1993, due to alleged problems with the automobile, defendant ceased making her lease payments to General Motors Acceptance Corporation ("GMAC") the assignee of the lease. GMAC is not a party to this appeal.

On November 10, 1993, GMAC filed a complaint under R.C. 2737.03 to recover the 1992 Cadillac Eldorado from defendant. On December 9, 1993, defendant filed an answer and counterclaim against GMAC asserting that the vehicle was a nonconforming new motor vehicle pursuant to R.C. 1345.71 *et. seq.* In addition, on the same date, defendant filed a third-party complaint for breach of warranty and violation of Ohio's Lemon Law, against Cadillac/GMC, the manufacturer of the vehicle, and McDaniel Motors Company, the dealer who leased the vehicle to defendant.

On February 4, 1994, the trial court entered summary judgment in favor of McDaniel Motors, which is also not a party to this appeal. On November 1, 1994, the trial court granted summary judgment in favor of Cadillac/GMC and GMAC on defendant's breach of warranty and Lemon Law claims, finding that Ohio's Lemon Law is inapplicable to lessees of new motor vehicles. The trial court further granted summary judgment in favor of GMAC on its original complaint to replevy defendant's automobile, but reserved judgment on damages until a later date.

Thereafter, defendant filed the instant appeal, asserting the following three assignments of error:

"I. The trial court committed reversible error when it granted summary judgment to appellee on the application of Ohio's Lemon Law to only purchasers of new motor vehicles and excluded persons entitled to enforce the warranty under Revised Code 1345.71 to 1345.77.

"II. It was error for the trial court to exclude appellant's warranty evidence, telephone logs and information sheets on the arbitration program from consideration, when the court granted summary judgment.

"III. It was error for the trial court to grant summary judgment to GMAC on appellant's bad faith claim."

At the outset, we note that defendant's third assignment of error addresses the propriety of the trial court's entry of summary judgment in favor of GMAC. As previously stated, GMAC is not a party to this appeal, as the trial court's summary judgment entry was only a final appealable order as applied to defendant and Cadillac/GMC. The trial court's summary judgment entry was not a final appealable order as to GMAC because the court did not decide the issue of damages until a later date. Accordingly, this court is without jurisdiction to consider defendant's third assignment of error.

Before reviewing the merits of defendant's first assignment of error we will consider the issue set forth in her second assignment of error concerning the trial court's exclusion of documents accompanying her motion in opposition to summary judgment. In the trial court's judgment entry, the court excluded telephone logs, information sheets and the warranty which apparently covered defendant's vehicle, as these items were not properly authenticated pursuant to Civ.R. 56.

Civ.R. 56 provides for the introduction of certain evidentiary material in support of a motion for summary judgment. The rule specifies that the only acceptable means of introducing documentary evidence for consideration on the motion is to incorporate it by reference in a properly framed affidavit. Civ.R. 56(E); *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632, 634. Furthermore, the incorporated document must be properly authenticated to be of the evidentiary nature required by Civ.R. 56(C). *Fuerst v. Cooley* (Oct. 6, 1989), Allen App. No. 1–88–4, unreported, 1989 WL 116946.

After reviewing the documents at issue, it appears that defendant did attach an affidavit to her September 6, 1994 motion in opposition to summary judgment. However, it is clear to us that defendant never properly incorporated

the vehicle warranty, telephone log or the information sheets on GM's mediation/arbitration program by reference in that or any affidavit as required by Civ.R. 56(E). Accordingly, we find that the trial court did not err in excluding these documents from consideration. Defendant's second assignment of error is overruled.

In defendant's first assignment of error, she asserts that the trial court erred in holding that the remedies set forth under Ohio's Lemon Law are not available to lessees of new automobiles. Cadillac/GMC argues that the trial court was correct in finding that Ohio's Lemon Law does not apply to lessees. Additionally, Cadillac/GMC argues that even assuming *arguendo* that the Lemon Law does apply to lessees, defendant has failed to establish her Lemon Law claim as a matter of law.

Ohio's Lemon Law is set forth in R.C. 1345.71 *et seq.* R.C. 1345.72, which is the operative portion of the Lemon Law, provides that:

"(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

"(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition that substantially impairs the use, safety, or value of the motor vehicle to the consumer after a reasonable number of repair attempts, the manufacturer shall, at the consumer's option, and subject to division (D) of this section replace the motor vehicle with a new motor vehicle acceptable to the consumer or accept return of the vehicle from the consumer and refund each of the following:

"(1) The full purchase price including, but not limited to, charges for undercoating, transportation, and installed options;

"(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

"(3) All finance charges incurred by the consumer;

"(4) All incidental damages, including any reasonable fees charged by the lender for making or canceling the loan."

With respect to the class of individuals who are entitled to bring a civil action under this statute, R.C. 1345.75 provides that:

"Any purchaser of a new motor vehicle who suffers any loss due to nonconformity of the motor vehicle as a result of failure by the manufacturer, its agent, or its authorized dealer to comply with section 1345.72 of the Revised Code, may bring a civil action in a court of common pleas * * *."

Moreover, pursuant to R.C. 1345.71(A), a "consumer" is defined as "the purchaser, other than for purposes of resale, of a motor vehicle, any person to whom the motor vehicle is transferred during the duration of the express warranty that is applicable to the motor vehicle, and any other person who is entitled by the terms of the warranty to enforce the warranty."

In *Pertuset v. Ford Motor Co.* (1994), 96 Ohio App.3d 777, 645 N.E.2d 1329, which appears to be the first appellate decision on this issue, the Fourth District Court of Appeals held that a lessee is a "consumer" under R.C. 1345.71(A) and is therefore entitled to the protection of the Lemon Law. The court stated that the third class of individuals defined as "consumers" under R.C. 1345.71(A) consists of the nonpurchaser, nontitleholder who is entitled to enforce the warranty on the vehicle. The court concluded that lessees are the group which most closely fits this description and thus held that lessees are entitled to relief under Ohio's Lemon Law.

We believe that Ohio's Lemon Law is a consumer protection statute which should be liberally construed in favor of the consumer. Moreover, we find the Fourth District's reasoning persuasive to the extent that sound public policy would dictate that lessees, many of whom make substantial advance payments and frequently pay a variety of "service charges" included in the agreement as "interest" and even "sales tax," should have the same basic protection as purchasers of new motor vehicles.

On the other hand, as we have previously noted, the remedies set forth in R.C. 1345.72 specifically apply to the consumer who actually purchases and receives title to a new motor vehicle. Moreover, and perhaps typically, the record regarding the lease transaction in the case before us contains no reference to any of the refundable items set forth in this statute. This would seem to raise a question as to whether an appellate court can ever apply these remedies to a lease without essentially "rewriting" the statute in order to do so.

However, in the case before us, even assuming *arguendo* that Ohio's Lemon Law applies to lessees as a class, we do not believe the defendant has established facts which would entitle her to relief under that law. In order for defendant to prevail on her Lemon Law claim, she must establish that there is a defect present in her automobile "which substantially impairs the use, value, or

safety of [the] motor vehicle and does not conform to the express warranty of the manufacturer or distributor." R.C. 1345.71(E). Furthermore, defendant must establish that the defect or defects persisted after the manufacturer or dealer has made a reasonable number of attempts to repair the vehicle.

With respect to what constitutes a reasonable number of repair attempts, R.C. 1345.73 provides:

"It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:

"(A) Substantially the same nonconformity has been subject to repair three or more times and continues to exist;

"(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

"(C) There have been eight or more attempts to repair any nonconformity that substantially impairs the use and value of the motor vehicle to the consumer;

"(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity continues to exist."

The record reveals that the repairs performed on defendant's vehicle consisted primarily of "fit and finish" adjustments to parts such as moldings, windows, bumpers and headlights. None of the problems defendant had with her vehicle affected its engine, drivetrain or mechanical functioning in any way. In fact, in defendant's deposition, she stated that the vehicle's problems only related to "fit and finish" and that there were absolutely no mechanical problems with the vehicle. Thus, we are of the opinion that no reasonable jury could conclude that the defects present in defendant's vehicle were substantial within the meaning of the statute.

Furthermore, even assuming *arguendo* that the defects present in the vehicle can be considered to substantially impair the use, safety or value of the vehicle from defendant's perspective, defendant's claim would still fail as neither Cadillac/GMC nor its dealer has been given ample opportunity to repair the vehicle. Defendant claims that she brought the vehicle back to McDaniel Motors on four occasions, while Cadillac/GMC asserts that she only brought the vehicle in for repair on three occasions. However, regardless of whether defendant brought the vehicle in for repairs on three or four occasions, the record is clear that no individual nonconformity has been subject to repair on three or more occasions.

Finally, it appears that defendant gave GMC/Cadillac only one opportunity to inspect the car and did not give it any opportunity to actually repair the car prior to placing it in storage. Thus, defendant has not established that a reasonable number of repair attempts have been undertaken by Cadillac/GMC or its dealer, McDaniel Motors. Furthermore, defendant has not established any facts which demonstrate that any of the other three statutory presumptions concerning a reasonable number of repair attempts apply to her case. R.C. 1345.73(B), (C) and (D).

.Accordingly, we find it unnecessary to determine in the abstract whether Ohio's Lemon Law is applicable to the lease of a new motor vehicle, inasmuch as defendant has failed to establish genuine issues of material fact in this case which would entitle her to relief under that law in any event. For this reason alone, defendant's first assignment of error is overruled.

In summary, defendant's first and second assignments of error are overruled and this court is without jurisdiction to consider defendant's third assignment of error. Accordingly, the judgment of the Logan County Court of Common Pleas granting summary judgment in favor of Cadillac/GMC is affirmed.

*Judgment affirmed.*

HADLEY and EVANS, JJ., concur.