OPINION
This timely appeal arises from a Judgment Entry of the Mahoning County Court of Common Pleas dismissing Appellant's complaint for negligence and breach of warranty in the rebuilding of an engine and granting of Appellee's counterclaims for unpaid parts and labor unrelated to the warranty. For the following reasons we affirm the decision of the trial court.
Appellant is a construction and demolition company with a fleet of heavy equipment. It had purchased a used Komatsu PC-1000 Excavator, which is an extremely large piece of equipment with a six cylinder diesel engine. Appellee is an authorized Komatsu dealer which sells, leases, services and repairs Komatsu engines and equipment.
In April, 1995, Appellant contracted with Appellee to rebuild the diesel engine in the Komatsu PC-1000 Excavator. Appellee rebuilt the engine at its shop and reinstalled it on April 25-26, 1995. Appellee provided a one-year warranty from defects in new materials installed and workmanship performed.
Over the next eleven months Appellee performed eight sets of field service calls on the Komatsu engine at Appellant's equipment yard in Youngstown. Two of the these service calls were covered by the warranty and six were for unwarranted matters.
On April 2, 1996, Appellee responded to a service call from Appellant, but the mechanic who responded to the call was ordered to leave the premises before he could inspect the engine. Appellant wrote to Appellee that same day demanding that the warranty be extended and the engine rebuilt. Appellee requested oil sample test reports from Appellant and an opportunity to inspect and observe the engine to determine whether the problems were covered by the warranty. Appellant refused to allow Appellee to have access to the engine or the test results unless Appellee first agreed, as a precondition, that it would rebuild the engine and provide a new one-year warranty at no cost.
Appellant initiated this action on June 21, 1996, under theories of breach of contract and negligence. Appellant sought damages for rebuilding the engine and further consequential damages for loss of use of the excavator for the length of time the engine was down. Appellee counterclaimed for the cost of unwarranted repair work and unpaid parts unrelated to the engine work.
The case was assigned to a magistrate who conducted a bench trial in April, 1998, resulting in a transcript of 1,363 pages. On May 14, 1998, the magistrate's decision dismissed Appellant's complaint with prejudice for failure to establish liability on the part of Appellee. The decision also granted judgment in favor of Appellee on its counterclaims for the repair work not covered by warranty, over-the-counter parts and prejudgment interest.
On May 27, 1998, Appellant filed objections to the magistrate's decision and on March 26, 1999, the Mahoning County Court of Common Pleas overruled Appellant's objections and adopted the magistrate's decision. Appellee was awarded $36,156.01 plus interest from the date of judgment. On April 20, 1999, the court modified its entry and awarded Appellee interest from the date of the magistrate's decision. Appellant then filed this timely appeal.
Appellant's first assignment of error alleges:
 "The lower court erred when it determined that the plaintiff-appellant, in bad faith, prevented the performance of the defendant-appellee."
Appellant's argument in this assignment is two-fold. First, Appellant contends that the trial court incorrectly applied a general rule of contract law to the specific facts of this case; that a party which prevents, in bad faith, the performance of an adverse party cannot later take advantage of that noncompliance. Second, Appellant argues that Ohio's automobile "lemon law," codified in R.C. § 1345.71, et seq., should apply to the facts of the instant case. Neither prong of Appellant's argument is persuasive.
An implied term of any contract is that one party will not, in bad faith, prevent the performance by the other party. Wernerv. Biederman (1940), 64 Ohio App. 423, 428. This Court has held that, "a party who prevents performance on his own part or on the part of the adverse party cannot take advantage of such noncompliance or nonperformance by the party obligated to perform under the contract." Gary Crim, Inc. v. Rios (1996), 114 Ohio App.3d 433,436. This rule has been applied in a wide variety of contract situations including: (1) service contracts (Suter v.Farmers' Fertilizer Co. (1919), 100 Ohio St. 403, 408); (2) real estate leases (Gary Crim, Inc., supra; Ambrosia Coal and Const.Co. v. C.B.G., Inc. (May 6, 1996), Mahoning App. No. 94 CA 199, unreported); and (3) investment contracts (Dynes Corp. v. Seikel,Koly Co., Inc. (1994), 100 Ohio App.3d 620, 641). Appellant cites no compelling reason why the same rule should not be applied to a contract to rebuild an engine in a piece of industrial heavy equipment.
In addition, even if Appellant were correct in his assertion that he did not in bad faith prevent Appellee's performance of contractual obligations, Appellant has failed to challenge on appeal the trial court holding that there was no evidence that Appellee was negligent or breached its warranty contract. Without any liability on the part of Appellee, there is no basis for granting Appellant the relief prayed for in its complaint.
Appellant does not explain the relevance of R.C. § 1345.71, et seq., to this case. The "lemon law" applies exclusively to new passenger cars and noncommercial motor vehicles. R.C. §§1345.72(A), 1345.71(D); see also Day v. Bean Townsend Ford
(1998), 129 Ohio App.3d 265, 268. The Komatsu rebuilt engine was, clearly, not new and was neither a passenger car or noncommercial vehicle. In addition, Appellant failed to plead a violation of this law in his complaint.
The record reflects that Appellant's actions prevented Appellee from performing its duties under the warranty. As the trial court applied the correct rule of law here, Appellant's first assignment of error is without merit.
The second assignment of error asserts:
 "The lower court erred when it failed to render a decision on count three regarding plaintiff-appellant's claim for downtime."
Count three of Appellant's complaint is not a separate theory of liability but rather a claim for further consequential damages resulting from Appellee's alleged negligence and breach of contract. The complaint states: "[A]s a direct and proximate result of Defendants [sic] breach of contract or negligence, Plaintiff has been deprived [sic] the use of its equipment resulting in actual damages of TWENTY-THREE THOUSAND DOLLARS ($23,000.00)." (6/21/96 Complaint, p. 2). Appellant has not challenged the holding of the trial court that there was no evidence on the record to prove that Appellee was liable in negligence or breach of contract. Therefore, there is no basis on which to award consequential damages for lost use of the Komatsu excavator due to downtime attributable to any such negligence or breach of contract. Thus, Appellant's second assignment of error is without merit.
Assignment of Error No. 3 alleges:
 "The lower court erred when it granted judgment for defendant-appellee in the amount of $36,156.01."
Appellant has not contested in this assignment of error an award to Appellee for parts which it purchased unrelated to the original rebuilding and warranty work on the engine of $17,809.64 plus interest, totalling $24,221.12. Appellant disputes the judgment for alleged unnecessary work done by Appellee which totalled $8,364.98. Appellant argues that Appellee's own expert witness, Mr. McGee, testified that unnecessary repairs were made on cylinders five and six. (Tr. p. 1305-1307). Appellee argues that a witness for Appellant, Mr. Timothy Graham, testified that when he ordered the repairs, including those on cylinders five and six, he knew they would not be covered under the warranty. (Tr. p. 276). Appellant's argument appears to be that Mr. McGee is a more credible witness than Mr. Graham.
The trier of fact is free to believe some, all, or none of the testimony of any witness. State v. Jackson (1993), 86 Ohio App.3d 29,33; State v. Mastel (1971), 26 Ohio St.2d 170, 177. An appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence.State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes (1983),7 Ohio St.3d 7, 8. If the judgment of the court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279
at syllabus. Further, a reviewing court must indulge in every reasonable presumption in favor of the lower court's judgment and findings of fact. Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226. The evidence must be construed consistently with the lower court's judgment if the evidence is susceptible to more than one interpretation. Id. We defer to the trial court's findings because it is in the best position to observe witnesses and weigh this credibility. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The record contains evidence that Appellant was aware that the repairs it had requested were not covered under the warranty. The trial court was free to reject the inconsistent testimony of Mr. McGee and rely on the testimony of Mr. Graham. Appellant's third assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed in its entirety.
VUKOVICH, J., DONOFRIO, J., concurs.